TEXAS CENTRAL RAILROAD COMPANY v. LAURA V. WHEELER.

Decided December 12, 1908.

**1.—Minor—Female—Removal of Disability.**

A female minor may have her disabilities removed by decree of court under article 3499, of the Revised Statutes. The use of the masculine pronoun in that statute includes the feminine.

**2.—Evidence—Declarations—Agency—Contributory Negligence.**

On issue of contributory negligence consisting in haste and carelessness on the part of the passenger who, in attempting to board a train at night fell over a baggage truck obstructing the platform, an injunction to hurry by one of defendant's employes on the train was admissible in evidence to excuse such haste. It would seem also that similar injunctions by one not connected with the railway would be admissible in explanation of plaintiff's conduct.

**3.—Pleading—Injuries to Person.**

Under a general averment of injuries to plaintiff's body and limbs to which no special exception had been urged, evidence of injuries to plaintiff's back was properly admitted.

**4.—Evidence—Complaint of Suffering.**

Where bodily or mental suffering is at issue the expression of such feeling by the party made at the time in question is admissible as original evidence.

**5.—Carriers of Passengers—Negligence—Truck on Passenger ·Platform.**

The presence of a baggage truck on an unlighted platform at a passenger station obstructing the passage from the waiting room to the train was sufficient to justify the submission to the jury of the issue of negligence of the carrier in permitting its presence in the case of a passenger injured by falling over same in the act of boarding a train.

**6.—Carriers of Passengers—Negligence—Lighted Platform.**

Failure to light a station platform was properly submitted as presenting

the issue of the carrier's negligence in a suit by a passenger injured by falling over an obstruction on the platform while attempting to board a train at night.

### 7.—Damages—Earnings of Minor—Remittitur.

Error in a charge which permitted the recovery of damages for personal injuries in an action by a minor on account of inability to work between the period of injury and the date of the legal removal of the disability of minority was cured by a remittitur of so much of the damages recovered as it was possible that the jury might have allowed for such inability to work during that period.

### 8.—Charge.

No error appears in the refusal of a requested instruction upon matters fully and sufficiently covered by the charge given.

### 9.—Damages.

Evidence considered and held to support a recovery of $1,125 as damages for personal injuries to a female minor, a passenger, received in boarding defendant's train.

Appeal from the District Court of Erath County. Tried below before Hon. W. J. Oxford.

*J. A. Kibler* and *Martin & George,* for appellant.—The laws of this State do not authorize the removal of disabilities of a minor, where such minor is a female. Rev. Stats., arts. 3499-3502.

In a personal injury case it is error to permit testimony as to any particular injury, or testimony as to diminished capacity to labor on account of any particular injury, unless there is an allegation complaining of the particular injury, as to which such testimony is offered. Dallas Con. Elec. St. Ry. Co. v. Lasch, 99 S. W., 729.

The laws of this State do not require a railroad company to keep its platform and depot premises "sufficiently lighted" or "properly lighted" at night at the time of the arrival and departure of its train, but the statute law requires simply that such premises be kept lighted, and our courts hold under this statute that this term means lighted in such a manner as a person of ordinary prudence would keep the same lighted under the same or similar circumstances; and it is error to instruct the jury to find against a defendant, where the lighting of its depot grounds is an issue, if it fails to keep such depot ground "sufficiently lighted" or "properly lighted," because such a charge imposes a greater burden upon the defendant than the law requires and fails to give to the jury any guide by which they may determine what "sufficiently lighted" or "properly lighted" means. Rev. Stat., art. 4521; Ft. Worth & N. O. Ry. Co. v. Enos, 50 S. W., 596; International & G. N. Ry. Co. v. Underwood, 64 Texas, 469; International & G. N. Ry. Co. v. Welch, 86. Texas, 203; Missouri, K. & T. Ry. Co. v. Wylie, 26 S. W. Rep., 85.

*B. E. Cook* and *J. B. Keith,* for appellee.—The duty of all railroad companies in this State to light their passenger platforms is a common law duty, and not a statutory duty, as suggested by appellant, and where the charge, as does the one in this case, leaves the question of negligence for failure to provide sufficient light entirely to

the jury, after properly defining negligence to them, no error is shown. Texas & P. Ry. Co. v. Lee, 21 Texas Civ. App., 174.

CONNER, CHIEF JUSTICE.—This suit was instituted in the District Court of Erath County on May 3, 1907, by B. B. Wheeler as next friend of his daughter, Laura V. Wheeler, a minor, against the appellant for personal injuries received by Laura V. Wheeler on appellant's platform at Cisco, Texas, on December 24, 1906. On the first day of July, 1907, in a proceeding brought for that purpose in the District Court of Erath County, Laura V. Wheeler had her disabilities as a minor removed, after which on December 4, 1907, she filed an amended petition setting up the fact that her disabilities had been removed and prayed that she might thereafter prosecute the suit in her own name. Appellant filed plea in abatement alleging as a ground therefor that Laura V. Wheeler "was a feme sole, still a minor, and that the order attempting to remove her disabilities of minority was void because she was a female, the statutes of this State authorizing the removal of the disabilities of minority only applying to men." The plea of abatement was overruled and trial had on December 5, 1907, resulting in a verdict in appellee's favor for the sum of twelve hundred and eighty dollars, for which judgment was entered less a remittitur of one hundred and fifty-five dollars filed by appellee as hereinafter noticed.

Appellee alleged in her petition that she was in appellant's depot at Cisco awaiting a westbound passenger train, due to arrive and depart about four o'clock a. m.; that she had purchased a ticket and was in the waiting-room; that upon arrival of the train she left the depot and undertook to board the train; that the depot and platform were not lighted, or not sufficiently lighted to see her way; that the train did not stop a sufficient length of time to permit her to board the same without hurry; that appellant's employes had left a trunk truck on the platform into which she ran and over which she fell, resulting in the temporary and permanent injuries described in her petition. It was charged that appellant was negligent in the particulars specified. In answer appellant presented a general denial, and specially that the platform was large, commodious and free from obstructions, and that it was necessary to have the trunk truck at the place in question for the purpose of receiving freight and express; that plaintiff was guilty of contributory negligence in failing to see and observe the truck and in rushing to board the train at a reckless rate of speed and at an unusual place; that appellee remained in the depot long after the arrival of the train instead of boarding it promptly, and that by the exercise of the least degree of care she could have seen the truck in question and avoided the injury, etc.

The facts show that appellee was less than twenty-one years of age at the time of the trial and appellant first insists that the court was in error in overruling its plea in abatement and in permitting appellee to prosecute the suit in her own name, notwithstanding the decree removing her disabilities, on the ground that the laws of this State did not authorize the removal of the disabilities of a minor where such minor is a female. Our statute on the subject is as fol-

lows: "Any minor in this state over the age of nineteen years, who may desire to have his disabilities as a minor removed, shall, by a bill or petition, present to the district court of the county where he may reside the cause or causes existing which make it advisable or advantageous to said minor to have his disabilities removed, which bill or petition shall be sworn to by some person cognizant of the facts set out in said bill or petition." The next article provides that the petition should be filed and placed on the trial docket of the court, and that if upon hearing "it shall appear to the court that the ground or causes set out are sufficient, and that it is advisable, or will be advantageous to such minor, in person or property, to have his disabilities as a minor removed, the court shall enter up a decree removing the disabilities of said minor, and cause it to be entered of record among the decrees and judgments of the court." Article 3501 provides that: "After the removal of such disabilities of minority, the said minor shall be deemed and held for all legal purposes, of full age, and shall be held responsible, and shall have all the privileges and advantages as if he were of full age, saving only that he shall not vote until he arrives at the full age of twenty-one years." Appellant's contention rests upon the use of the pronouns "he" and "his" found in the articles we have quoted. Our statute, however (Rev. Stats., art. 3268, clauses 3 and 6), provides, among other rules which shall govern in the construction of all civil statutory enactments, that: "The masculine gender shall include the feminine and neuter;" and that: "In all interpretations the court shall look diligently for the intention of the Legislature, keeping in view at all times the old law, the evil, and the remedy;" and in section 3 of the Final Title of the Revised Statutes it is further provided: "That the rule of the common law that statutes in derogation thereof shall be strictly construed shall have no application to the Revised Statutes, but the said statutes shall constitute the law of this State respecting the subjects to which they relate, and the provisions thereof shall be liberally construed with a view to effect their objects and to promote justice." In view of these rules of construction we are disposed to give greater emphasis than appellant to the very general terms "any minor," with which article 3499 quoted above begins. A feme sole over the age of twenty-one years in this State is given the same rights of property and of the management thereof as are guaranteed to males, and no reason occurs to us why a female over the age of nineteen and under that of twenty-one, possessed of property rights, should be excluded from the beneficial purposes provided for in article 3499. Neither as a matter of law or of fact can it be said that a female, merely because of her sex, between the ages stated is inferior, in right or in capacity to manage her property, to the male of the same age, and we can not think that it was the legislative purpose by the use of the masculine pronouns "he" and "his" in the statutes quoted to exclude from the operation of the statute the female minor. Nor should such effect be given to the saving clause denying the male, if the exception is to be so restricted as contended by appellant, the privilege of exercising a political right after the removal of disability until of full age. There was no neces-

sity for such limitation relating to females as they were otherwise denied the right to vote.   The judgment of removal in this case is conceded to be in all things regular save in the respect discussed, and in the case of Stewart v. Robbins, 27 Texas Civ. App., 188, in which a writ of error was denied, this court expressed the opinion that a judgment of a District Court removing the disabilities of a female minor under the statutes quoted was not void.   It is true the particular objection presented in this case was not there urged, but the point was necessarily involved.   We think the judgment authorized the prosecution of this suit thereafter in appellee's own name and the first assignment and propositions thereunder are accordingly overruled.

On the trial appellee testified, among other things, that "when the train was announced she left the defendant's depot and went to the train; that she supposed that it was the conductor of the train who made the announcement and that he said, 'Everybody that wants to go to Stamford will have to hurry.'"   To this appellant objected, because the person making the announcement was not shown to be an agent or servant of the company, and such announcement was not binding upon appellant.   This objection was overruled, and later appellant moved to exclude the testimony upon the same ground, which motion was also overruled, and these several rulings on the part of the court are made the basis of the second and third assignments of error.   We think appellant has entirely misapprehended the trend of some of the evidence.   One of the witnesses, who took passage at the same time as appellee, testified that: "We boarded the train immediately upon its arrival and the train within two or three minutes pulled out for Stamford."   The witness C. V. Compton testified upon his direct examination that: "Everyone made a run to catch the train as fast as we could run, as the bell was ringing and we knew the train was on the eve of starting.   The train was moving as I boarded it. . . . I hastily turned and aided her (appellee) as fast as I could to her feet, as the train was then starting, and helped her on the train."   On cross-examination this witness said: "All was done very hurriedly, and I urged her to get up quickly as the train was either moving or about to move."   The record further shows that the call to board the train objected to came from a man standing on the steps of the car with a lantern in his hand, and that appellee afterwards recognized the voice of one of the employes upon the train as that of the same person on the steps of the car making the announcement.   This certainly tends to refute the particular objection made to the evidence complained of.   Besides, appellant had specially pleaded appellee's haste in boarding the train as contributory negligence and the evidence objected to, irrespective of who may have made the announcement, was properly admissible upon this issue.

In the fourth assignment complaint is made of appellee's testimony to the effect that she could not do as much housework and could not pick as much cotton because of the injuries to her lower limbs and her back, on the ground that "there was no allegation of the injury to the plaintiff's back, and the testimony showed that her diminished

capacity to do the labor mentioned was on account of the injuries to her back." By reference to the petition we find it alleged, among other things, "that on account of such fall and collision with said truck plaintiff was greatly shocked and painfully hurt and bruised; that her body, arms and lower limbs where they came in contact with said truck were bruised, lacerated, mashed, torn and injured." There was no special exception urged to these allegations and the general averment of an injury to the body is broad enough, in the absence of such exception, to authorize proof of injury to any part thereof, including the back. See Ft. Worth & D. C. Ry. Co. v. Partin, 33 Texas Civ. App., 173. Besides, the reference to her back in the testimony of the witness seems to have been incidental rather than otherwise, the emphasis or weight being placed upon the injury to her limbs. The assignment is overruled.

On the trial while appellee was testifying she was asked upon cross-examination "if she would permit Doctors Day and Gordon, who were then sitting in the courtroom, to take the said witness to a private place in the presence of her lady friends and let the doctors examine her legs and wounds thereon." The witness refused to answer the question "yes" or "no," the court refused to require her to do so, and complaint is made of this action in the fifth assignment. The bill of exception taken at the time is approved by the trial judge with the explanation "that the witness was a young girl, and her father was present in the courtroom, and she answered that she wished to advise with her father and consult him as to what she would do, and the court permitted her to leave the stand and consult her father about the propriety of submitting to an examination, and she immediately returned to the stand and answered that she would not be examined." We find no error in the matter thus presented. It seems that the right of a plaintiff in this State to refuse to submit to an examination of his person is no longer an open question. See Austin & N. W. R. R. Co. v. Cluck, 27 Texas, 172; International & G. N. Ry. Co. v. Gready, 36 Texas Civ. App., 536. And we fail to see how appellant can legally complain of the witness's hesitation to answer the question propounded when it must be conceded it can not do so in case of a distinct and emphatic refusal. The refusal at most affords but an inference going to the weight of the witness's testimony on the subject of her injuries and of this inference appellant in this case had the full benefit, which would not have been increased by a peremptory direction on the part of the court for the witness to answer.

Complaint is made in the sixth assignment to the answer to the fourteenth interrogatory in the deposition of Mrs. Zora Roquemore as follows: "She, Laura V. Wheeler, complained during the entire three weeks she was at my house of these wounds and bruises, and these wounds and bruises and hurts so interfered with her walking that she would limp in trying to walk. The wounds seemed to be made by some hard substance or edge. She was very nervous, so much so she could not write, and she complained of her nervousness several times." The objection to this answer was that "it was hearsay evidence, self-serving declarations of the plaintiff, irrelative and

immaterial, and the opinion of a nonexpert witness." We need not cite authority on the proposition so frequently decided that whenever the bodily or mental feelings of an individual is a material issue in the trial of the case, the expression of such feelings made at the times in question is admissible as original evidence under an exception to the general rule. Besides, the objection went to the whole of the answer and the court properly overruled the objection if any part of the answer was admissible. The evidence shows that the visit referred to in the answer was but a few weeks after the injuries and there can be no possible question as to the admissibility, as matter of fact, of part of it.

There are a number of other assignments, but we do not deem them of sufficient merit to require an extended discussion, if indeed any of the assignments have been. In the seventh assignment complaint is made of the submission of the issue of negligence in permitting the trunk truck to be in the position it was at the time appellee fell over it, on the ground that one of appellant's witnesses, R. M. Cox, had testified that such truck was a necessary and proper instrument to be used in loading and discharging baggage from trains and that it was proper and necessary for it to be placed in the position it was in at the time of the injury, and on the further ground that there was no evidence whatever in the record which tended to show that the presence of the truck at said time and place was a negligent act upon the part of the defendant. A simple reference to the evidence entirely refutes the contention here made. It was shown that the witness Cox was not present at the time the injuries upon appellee were inflicted and had no personal knowledge of the location of the truck. Appellee testified that "the night was dark at that time and the platform at the station where the train stopped to receive passengers was dark. There were no lights on the outside of the depot; no electric lights anywhere about the platform. . . . I went to the train . . . the regularly traveled direction from the station waiting-room. On my way from the depot to the train there was an obstruction left across the path or platform which I ran into while going to the coaches. . . . I did not see the truck before I struck it and fell over it because it was too dark. I could not see anything. I don't think I could have seen it if I had looked for it." Another witness, Mrs. Vera Long, testified: "There were no lights at all after leaving the depot until we got in the passenger car. . . . It was a real dark night. . . . That the train stopped at the same place at each of the four times I have been there. . . . There was some obstruction on our way in going from the depot to the car where we boarded the Texas Central passenger train; it was a truck on the platform right in the pathway from the depot where the car and train were stopped for passengers to get off and on. . . . We went the usual way of travel from the said depot across the platform to the car." C. V. Compton, who was a traveler upon the same train, testified: "It was about four o'clock a. m. and very dark. . . . Laura Wheeler traveled in a direct route from the station to the passenger train, such as we all traveled,

and the best route that could have been traveled from the station to the entrance of the train. . . . There was a trunk truck on the depot platform a short distance from the place where we boarded the train on the station platform on the most practicable route to the entrance of said train."

The evidence last above cited will also tend to show a want of merit in the objection made in the eighth assignment to the court's charge as follows: "Or if you find that said station and platform and premises were dark and not lighted, or not sufficiently lighted, and you further find that the failure of the defendant to properly light said platform and station premises, if it did fail to do so, constituted negligence on its part, etc., your verdict will be for the plaintiff." This charge did not, as appellant insists, impose upon the defendant company the absolute duty of keeping its platform and premises properly lighted or sufficiently lighted. This was distinctly submitted to the jury as a question of negligence for their determination, and under the requirement of the statute (Rev. Stats., art. 4494), that railway companies ". . . shall furnish sufficient accommodations for the transportation of all such passengers and property as shall within a reasonable time previous thereto offer or be offered for transportation at the place of starting . . ." it is undoubtedly true that railway companies at a time and place such as are under consideration in this case are bound to use ordinary care to have their station platform sufficiently lighted to enable coming or parting passengers to board and to alight in reasonable safety to the person. See Texas & Pac. Ry. Co. v. Lee, 21 Texas Civ. App., 174. In this case it was hardly a question of whether there was a proper or sufficient light, for there seems to have been no light except, perhaps, such as was projected through the car windows. At all events, whether the light was such as would have been provided by a person of ordinary care and prudence under the same circumstances was an issue for the jury, and that issue, as before stated, was distinctly submitted.

The objection to the twelfth paragraph of the charge on the measure of damages, made in the ninth assignment, seems to have been met by a remittitur filed by appellee in the court below. The court charged that should they find for plaintiff they might find among other things the reasonable value of the time lost by appellee on account of her injuries, if any, and reasonable compensation for her decreased capacity to earn money in the future, if any. The objection to the charge, as presented in the only proposition urged under the assignment, is that "the parents of a minor, and not the minor, are entitled to recover for her time lost by reason of a personal injury, or for her diminished capacity to earn money from such injury, during her minority." The greatest sum claimed in appellee's petition as the worth of her services was twenty-five dollars per month. There was evidence showing that for the first three months after her injuries she was totally disabled; that for the next three and one-fifth months she worked, but was able to do but one-half as much as formerly, and appellee's remittitur was in the sum of one hundred and fifty-five dollars, which is twenty-five dollars per month for the

six and one-fifth months between the date of her injuries and the date of the decree removing her disabilities, and while it is true that for this period of her minority appellee's father alone would have been entitled to recover, it is hardly reasonable to suppose that the jury in any event allowed appellee a greater sum per month than was claimed in her petition and they were certainly not authorized to do so. The error, therefore, of the charge in authorizing a finding for appellee for such period of minority, we think, was cured by the remittitur, as before stated.

The court's charge we think fully and sufficiently submitted the issue of appellee's alleged contributory negligence, and that there was therefore no error in refusing the special charges mentioned in the tenth, eleventh and twelfth assignments.

The only remaining assignment questions the verdict as excessive, but we feel unable to so say after an examination of the evidence. It was to the effect that appellee was severely skinned and bruised, suffered severe nervous shock, was sick in bed the greater part of the time for three weeks, was totally incapacitated from her usual work for some three months, that her bruises and wounds were very painful, that at the time of the trial she was unable to walk any great distance without pain, that before her injury she was strong, able to do any of the ordinary work at the home, could pick as much as two hundred pounds of cotton per day, but that since her injury she had not been able to do her work as formerly and could not at the time of the trial pick more than one hundred pounds of cotton because of her inability to sustain continued exertion, etc.

We conclude that all assignments of error should be overruled and the judgment affirmed.

*Affirmed.*

. Writ of error refused.